## GEORGE ALGER *v.* R. O. CASTLE.

*Evidence. Contradiction of witness on immaterial issue.*
*Records as evidence.*

1. Where a witness testifies to a transaction, and the adverse party, on cross-examination, inquires of the witness as to conversations with third persons in reference to that transaction, the substance of such conversations cannot be shown for the purpose of impeaching the witness. Such conversations are immaterial, or, if material, the adverse party makes the witness his own.

2. The record of a corporation cannot be admitted to show the declaration of a third person made in the way of a report to the corporation, unless, at least, the person to be affected by such declaration was present, and heard the report made.

Assumpsit for rent. Plea, the general issue. Trial by jury, Chittenden County, September Term, 1887, Tyler, J., presiding. Exceptions by the plaintiff.

The plaintiff claimed to recover for the use and occupation of a piece of land situated in Monkton, and owned by the Baptist Society of Hinesburgh, Vt., known as the " Priest lot." It appeared that previously to 1881, the Priest lot had been bounded on three sides by the farm of the plaintiff, and that he had leased it of the society. The plaintiff's farm was encumbered by mortgage to the Burlington Savings Bank. This mortgage had been foreclosed, and the plaintiff's equity of redemption in the premises expired on the 12th of April, 1881, when the bank went into possession.

The business affairs of the Baptist Society were managed by a committee acting with the deacons of the church, and the minister. Some time in April, after the plaintiff had lost the possession of his farm, one John H. Allen, a member of said committee, with the knowledge and consent of the other members of the committee and the deacons of the church, rented the Priest lot to the plaintiff for $20 a year. The evidence of the plaintiff tended to show that the lease to the plaintiff was for two years, but this was denied, the evidence of the defendant tending to show that it was for only one year.

On May 11, 1881, the bank conveyed the said farm to one James Miner, who rented it to the defendant at the halves, giving him possession that month.

The evidence of the plaintiff further tended to show that about the middle of June the defendant came to his house, and that he, the plaintiff, then leased him this Priest lot for one year for $25, and that the defendant took possession under said lease and occupied it for the year, but had not paid the rent.

The defendant contended that this talk with the plaintiff was not on his own account, but that he was acting for Miner, and that neither of them ever hired the lot of the plaintiff, but that an arrangement was made between the plaintiff, the society and Miner, by which Miner was substituted for the plaintiff in his contract for the lot, so that Miner held the lot directly from the society, and was to pay it the agreed rent of $20.

The evidence of the plaintiff tended to show that in the spring of 1882 he paid the sum of $20 to the said Allen for rent, and that it was accepted by him on behalf of the committee in full payment therefor.

The plaintiff was not present at any talk or trade made between Miner and the society with reference to this lot.

The plaintiff introduced as witness the said John H. Allen, who testified to the fact and circumstances in a general way as to the renting of the lot to the plaintiff, and the receipt and appropriation of the $20 rent. On cross-examination he was inquired of in detail as to the particulars of these transactions, and as to what he had said to third persons with regard thereto. The defendant then called these persons, and was permitted to show, against the exception of the plaintiff, for the purpose of contradicting and impeaching the witness Allen, that these conversations, at which the plaintiff was not present, were in fact different from those detailed by the witness, and what they were.

The defendant was allowed to introduce, against the exception of the plaintiff, extracts from the records of the society as follows :

"April 1, 1882.

" Business meeting.   J. H. Allen, Clerk pro tem.   Bro. William Sanctuary reported that the Beecher lot could not be rented to Mr. J. Miner this year.

" Elected Bro. Elbert W. Post Church Clerk.

"J. H. ALLEN, Clerk pro tem."

"June 3, 1882.

" Church meeting.   After singing and prayer, Bro. J. H. Allen reported that had rented the Beecher lot to R. O. Castle for $20.

"Voted to continue the use of subscription cards for our pastor's salary.

" E. W. POST, Clerk, per A. S. GILBERT, Pastor."

The first of these records was admitted for the purpose of showing that the " Priest lot," which was the same as the Beecher lot mentioned in the record, had been rented to Miner the year before, and that the witness Allen knew it.

*L. F. Wilbur* and *A. V. Spalding*, for the plaintiff.

The only question at issue was, did the plaintiff surrender his lease, and did the society relet it to Miner, or substitute Miner for the plaintiff.   The defendant undertook to make out the affirmative of that issue by conversations which he showed, against the plaintiff's exception, between the witness Allen and third persons, when the plaintiff was not present.   This we insist the defendant could not do: 1st, because those witnesses detailed conversations which took place when the plaintiff was not present; 2d, because the defendant could not cross-examine Allen on new matter, or immaterial matter, and then impeach him when the evidence was not satisfactory.

The records were clearly inadmissible for the purpose for which they were offered and received.   *Walworth* v. *Barron*, 54 Vt. 677.

The opinion of the court was delivered by

Ross, J.   This action is assumpsit for the recovery of the rent of the " Priest lot."   It does not appear to have been controverted that the plaintiff hired the lot of the Baptist Society for

the year 1881. He claimed to have sublet it for that year to the defendant. The defendant does not appear to have contravened that he had the use of the lot that year, but he claimed that the plaintiff either surrendered the lot during the spring of that year to the society, and that the society relet the lot to James Miner, or that James Miner became the lessee for that year by novation, and that he hired of James Miner. It appeared that Miner first paid for the use of the lot that year in wood, and then the plaintiff paid for the use of it in money; that the society took the money paid by the plaintiff and paid it to Miner. The main contention, on the trial, was, whether the plaintiff or Miner was the lessee of the society for that year. The society through one of its officers, Allen, first rented it to the plaintiff; then some of the other officers of the society, understanding from the plaintiff that he was willing to surrender the lease of the lot, rented it to Miner, and the rent was paid to the minister in wood by Miner. Afterwards the plaintiff paid the rent in money to Allen, through whom, acting for the society, he hired the lot. Allen and the other officers of the society, finding they had thus received rent twice, took the money paid by the plaintiff and had one of their number carry it to Miner and get him to take it. The plaintiff used Allen as a witness to show that the plaintiff hired the lot for that year, and that he paid the rent therefor in the spring of 1882 to Allen. This was all that the plaintiff showed by Allen when first called. In cross examination the defendant was allowed to inquire of Mr. Allen whether he did not say to various persons that he received the rent from the plaintiff under protest, and also what was said between him and others, when the plaintiff was not present, about how the $20 was received and disposed of. Then the defendant was allowed, against the exception of the plaintiff, to show in detail what was said on these occasions by Allen and others, about the receipt and disposal of the money, to contradict Allen. The plaintiff gave no directions in regard to the disposal of the $20 which he paid for the rent of the lot, and could not be affected by what Allen or the others said on that subject without his knowledge. What was done with the $20 and all that was said by Allen, or the

others in regard to its disposal, except to show that the society for which Allen acted received and kept the money, was immaterial to any issue in the case, and the defendant could not lawfully contradict Allen, the plaintiff's witness, in regard to this immaterial matter, although Allen was allowed to be examined on it by the defendant without objection by the plaintiff. The plaintiff not having introduced the subject in his examination in chief, the defendant made Allen his own witness on this point, and was bound by his answers. He could not be allowed to impeach Allen upon immaterial matter thus called out by him, both because he made Allen his own witness on such matter, and because it was immaterial to any issue in the case. The plaintiff's several exceptions to this class of testimony, which the defendant was allowed to introduce are sustained.

Several witnesses were also allowed to testify to what they had heard, and what was current in the church, against the plaintiff's exception. It is too elementary to need the citation of authorities, that such testimony could not be received lawfully.

Against the plaintiff's exception, the defendant was allowed to put in evidence the records of business meetings of the Baptist Society of April 1, 1882, in which it was stated that a brother reported that the Beecher lot could not be rented to Mr. Miner this year, and of June 3, 1882, at which Allen reported that he had rented the lot to R. O. Castle. This was allowed to be introduced to show that Miner rented it in 1881, and Allen knew it. It is very evident that the records have no tendency to show any such fact against the plaintiff, who was not a member of the society, so far as is shown, nor present at the meetings. The records are entirely empty of any allusion or reference to the person who rented the lot in 1881. The admission of these records was clearly erroneous.

There are other exceptions to the admission of evidence, and to the refusal of the court to charge as requested, relied upon, but which we need not consider, as what we have already considered reverses the judgment of the court below. .

*The judgment of the County Court is reversed and cause remanded for a new trial.*